UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER B. NGUYEN, et al.,

Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, et al.,

Defendants.

No.: 2:20-cv-00597-BJR

DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT

**ORAL ARGUMENT REQUESTED**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Travelers Casualty Insurance Company of America ("Travelers Casualty"), Travelers Indemnity Company of America ("Travelers Indemnity"), and The Charter Oak Fire Insurance Company ("Charter Oak") (together, "Defendants" or "Travelers") hereby move to dismiss, with prejudice, for failure to state a claim upon which relief may be granted, all claims asserted in the Consolidated Amended Class Action Complaint by Plaintiffs Jennifer B. Nguyen, DDS, PLLC, *d/b/a* Seattle Smiles Dental ("Nguyen"); Suneet S. Bath, DMD PS, *d/b/a* Impressions Dentistry Family Cosmetics ("Bath"); Ryan M. Fox, DDS ("Fox"); Kuzi Hsue, DDS, PS ("Hsue"); Jeffrey E. Kashner, DDS, MSD ("Kashner" and, together with Nguyen, Bath, Fox, and Hsue, the "Dentist Plaintiffs"); and Stan's Bar-B-Q LLC ("Stan's" and, together with the Dentist Plaintiffs, "Plaintiffs").

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 1

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

# I. INTRODUCTION

The COVID-19 pandemic has affected the public and many businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

In this proposed class action, Plaintiffs allege that insurance policies issued by Defendants provide coverage for business income losses arising from the coronavirus known as SARS-CoV-2 (the "Coronavirus") and related proclamations issued by Washington Governor Jay Inslee to slow the spread of the Coronavirus (the "Orders"). Nguyen, Bath, Fox, Hsue, and Kashner all own and operate dentistry practices located, respectively, in Seattle, Olympia, Kirkland, Tukwila, and Covington, Washington. (Consolidated Amended Class Action Complaint, ECF No. 35 ("CAC"), ¶¶ 5-9). Stan's owns and operates a restaurant located in Issaquah, Washington. (*Id.*, ¶ 11). Each Plaintiff obtained property insurance coverage from one of the Defendants. Plaintiffs assert claims for declaratory judgment and breach of contract under their applicable insurance policy (the "Policies"), alleging that they are entitled to coverage for claimed business income and extra expenses losses caused by the Orders, which "prohibited dental practitioners from providing dental services but for urgent and emergency procedures" and "allow[ed] . . . restaurants and food services to operate only to 'provid[e] delivery or take-away services.'" (*Id.*, ¶¶ 54, 58). Plaintiffs seek coverage under the Business Income, Extra Expense, Extended Business Income and Civil Authority provisions in their respective Policies. (*Id.*, ¶¶ 92, 104, 108).

The CAC should be dismissed for several reasons. *First*, all of the coverage provisions at issue require a Covered Cause of Loss as an express prerequisite to coverage. Plaintiffs cannot satisfy the requirement of a Covered Cause of Loss because the Coronavirus is an expressly excluded cause of loss under the virus exclusion, which excludes *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 2

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

inducing physical distress, illness or disease." (Nguyen Policy, Ex. A, p. 288 of 318).[1] This exclusion expressly applies to *all* of the coverages Plaintiffs seek. The CAC makes a weak attempt to avoid application of this exclusion by vaguely asserting regulatory estoppel (CAC, ¶¶ 86-87), a doctrine that has been rejected in almost all jurisdictions, never applied in Washington, and cannot save Plaintiffs' claims from dismissal. To the extent Plaintiffs claim that the Orders (not the Coronavirus) caused their losses, the Policies' Ordinance or Law exclusion and Acts or Decisions exclusion also apply.

*Second*, the CAC fails to allege facts that could establish Plaintiffs' entitlement to Business Income, Extra Expense or Extended Business Income coverage because the CAC fails to plead the requisite "direct physical loss of or damage to property" at any of the insured premises. (Ex. A, pp. 163–64 of 318). Plaintiffs do not allege that any of their business personal property was physically lost or damaged, or that there was any physical loss of or damage to the buildings in which they operate their businesses. Plaintiffs' legal theory is that the alleged inability to *use* their properties for their "full" intended purposes (i.e., non-urgent procedures in the Dentist Plaintiffs' dental practices and dine-in service in Stan's restaurant) constitutes "direct physical loss of . . . property." That position is incorrect as a matter of law.

---

[1] Travelers Casualty issued to Nguyen an insurance policy bearing policy number 680-1F186006-19-42, a certified copy of which is attached hereto as <u>Exhibit A</u>. Travelers Casualty also issued insurance policies to Bath (policy no. 680-4575X855-19-42), Fox (policy no. 680-6P297082-20-42), and Hsue (policy no. 680-9C844586-19-42), certified copies of which are attached hereto as <u>Exhibits B</u>, <u>C</u>, and <u>D</u>, respectively. Travelers Indemnity issued to Kashner an insurance policy bearing policy number 680-7093H596-19-42, a certified copy of which is attached hereto as <u>Exhibit E</u>. Charter Oak issued to Stan's an insurance policy bearing policy number 680-2516B003-19-42, a certified copy of which is attached hereto as <u>Exhibit F</u>. All of these policies are referred to collectively herein as the "Policies" unless otherwise indicated. The Court may consider the Policies in reviewing this Motion to Dismiss because they are specifically referenced in the CAC and Plaintiffs' claims are based on the Policies. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Bilstein Corp. of Am. v. Fed. Ins. Co.*, 168 F.3d 497 (9th Cir. 1999) (holding district court deciding Rule 12(b)(6) motion properly considered insurance policy "specifically referred to" in the complaint). The policy provisions at issue in this Motion are identical. For that reason, references to the Policies' language will be made by citation to the Nguyen Policy (Ex. A). All references to page numbers of the Nguyen Policy correspond to the "Travelers Doc Mgmt." number that appears in the bottom margin, right-hand side of each page of <u>Exhibit A</u>. For ease of reference, Travelers has included at the start of <u>Exhibit A</u> a chart providing corresponding citations to the relevant provisions in each of the other Plaintiffs' Policies.

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 3

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

1     *Third*, the CAC fails to establish an entitlement to coverage under the Polices' Civil

2 Authority coverage because it does not include factual allegations that, if true, would establish

3 two essential requirements for that coverage: (1) "action of civil authority that prohibits access to

4 the described [i.e., insured] premises"; and (2) the civil authority action is "due to direct physical

5 loss of or damage to property at locations, other than [the insured] premises, that are within 100

6 miles of the [insured] premises, caused by a Covered Cause of Loss." (Ex. A, p. 176 of 318).

7 None of the Orders prohibited access to the Dentist Plaintiffs' dental offices or Stan's restaurant;

8 rather, access was permitted for urgent procedures at the dental offices, and preparation of food

9 for takeout or delivery service at the restaurant. In addition, none of the Orders were issued "due

10 to" direct physical loss of or damage to property at any location. To the contrary, the CAC

11 alleges, and the Orders confirm, that they were issued to mitigate the spread of the Coronavirus,

12 not as a result of any direct physical loss of or damage to property.

13     Because the CAC does not plead facts sufficient to support Plaintiffs' entitlement to

14 coverage under the Policies, their breach of contract claim fail as a matter of law, and they are

15 not entitled to declaratory relief. To the extent Plaintiffs attempt to proceed on behalf of a

16 proposed class, they cannot do so where their individual claims fail to state a claim. Accordingly,

17 the CAC should be dismissed in its entirety and with prejudice.

18             **II.     PROCEDURAL HISTORY AND ALLEGED FACTS**

19     **A.    This Lawsuit**

20     Nguyen, Bath, Fox, Hsue, and Kashner each operate individual dentistry practices

21 located, respectively, in Seattle, Olympia, Kirkland, Tukwila, and Covington, Washington.

22 (CAC, ¶¶ 5-9). Stan's owns and operates a restaurant located in Issaquah, Washington. (*Id.*, ¶

23 11). One of the Defendants issued a Policy to each of the Plaintiffs, and the Policies have been in

24 effect during the COVID-19 pandemic. (Exs. A-F.) The CAC seeks coverage under the Policies'

25 Business Income, Extra Expense, Extended Business Income and Civil Authority provisions.

26 (CAC, ¶ 26).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 4

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Plaintiffs allege that, "as a result of the COVID-19 outbreak," Washington Governor Jay Inslee issued several "proclamations and orders" (collectively, the "Orders") "requiring certain public health precautions" which "affect[ed] many . . . businesses in Washington, whether infected with COVID-19 or not." (*Id.*, ¶ 51). As a result of the Orders, Plaintiffs allege that Stan's "was unable to use its restaurant for its full insured purpose of sit-down dining and full-service bar," but acknowledge that the Orders allowed Stan's to provide take-out and delivery service. (CAC, ¶ 58). Plaintiffs further allege that, due to the Orders, the Dentist Plaintiffs have been "unable to engage in their full dental practices and unable to use their dental properties for their full insured purposes," but concede that the Orders allowed the Dentist Plaintiffs to provide emergency treatment. (*Id.*, ¶¶ 54, 69). Plaintiffs allege that the partial loss of the use of their insured premises ("Premises") occasioned by the Orders and the Coronavirus constitutes "direct physical loss and/or direct physical property damage." (*Id.*, ¶¶ 73-78). Plaintiffs do not allege that the Coronavirus ever entered any of the insured Premises.

Plaintiffs seek a declaratory judgment that "the policy or policies cover the Plaintiffs' losses and expenses resulting from the interruption of the Plaintiffs' business by COVID-19 and/or orders issued by Governor Inslee, other Governors, and/or other authorities." (*Id.*, Count One and Prayer for Relief, ¶ 2). Plaintiffs also allege a breach of contract claim, alleging that "[d]enying coverage for the claims is a breach of the insurance contract." (*Id.*, ¶ 113).

**B.    Governor Inslee's Proclamations**

The CAC relies on the following relevant Orders[2] issued by Governor Inslee:

- Proclamation 20-13, issued by Governor Inslee on March 16, 2020, which, "in order to limit

[2] The relevant proclamations issued by Governor Inslee can be properly considered on this motion to dismiss because they are referenced in and relied upon in the CAC, and because the Court can take judicial notice of them under Fed. R. Evid. 201(b), (d). *See, e.g., Bassidji v. Goe*, 413 F.3d 928, 930 (9th Cir. 2005) (interpreting and applying executive order in deciding appeal from decision on Rule 12(b)(6) motion to dismiss); *S.A. v. Trump*, 363 F. Supp. 3d 1048, 1061 (N.D. Cal. 2018) ("The court[, in deciding a motion to dismiss,] can take judicial notice of the Executive Order under the incorporation-by-reference doctrine because it is cited in the complaint, and as a matter of public record") [citation omitted]).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 5

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

opportunities for disease exposure and transmission in the State," "prohibit[ed] the onsite consumption of food and/or beverages in a public venue, including . . . [r]estaurants" and "[b]ars," but expressly "[did] not prohibit the sale of prepared food or beverages" for "drive-through, take-out, and delivery services." (Proclamation 20-13, attached hereto as Exhibit G, pp. 1-2; CAC, ¶ 52);

- Proclamation 20-24, which Governor Inslee issued on March 19, 2020 in order "[t]o curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services." (Proclamation 20-24, attached hereto as Exhibit H, p. 1; *see also* CAC, ¶ 54). To that end, Proclamation 20-24 prohibited, among other healthcare facilities, "dental, orthodontic, and endodontic offices in Washington State from providing health care services, procedures, and surgeries that, if delayed, are not anticipated to cause harm to the patient within the next three months." (Ex. H, p. 2). Excepted from this limited prohibition, however, were "treatment for patients with emergency/urgent needs" and "any surgery that if delayed or canceled would result in the patient's condition worsening (for example, . . . dental care related to the relief of pain and management of infection.)" (*Id.*, pp. 2-3).[3]

- Proclamation 20-25, entitled "Stay Home – Stay Healthy," which Governor Inslee issued on March 23, 2020 due to an outbreak of "the COVID-19 disease," which is caused by "a virus that spreads easily from person to person which may result in serious illness or death." (Proclamation 20-25, attached hereto as Exhibit J, p. 1 (emphasis added); *see also* CAC, ¶

---

[3] Governor Inslee later clarified Proclamation 20-24 through the issuance of an "Interpretive Statement Related to Proclamation by the Governor 20-24, Restrictions on Non-Urgent Medical Procedures" on April 29, 2020. ("Interpretive Statement," attached hereto as Exhibit I). Governor Inslee's Interpretive Statement explained that "the Proclamation allows performance of all services considered to be 'emergent' or 'urgent' for which delay would result in worsening a life-threatening or debilitating prognosis" and directed that "[c]linicians should use clinical judgment to determine performance of procedures considered to be non-urgent or 'elective.'" (Ex. I, p. 1). The Interpretive Statement reiterated that "the Governor leaves assessment of harm up to the individual clinician," and provided various factors for clinicians to consider in deciding whether to perform a specific procedure for a particular patient during the pandemic. (*Id.*).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 6

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

57). Proclamation 20-25 "prohibited" state residents "from leaving their home or place of residence except to conduct or participate in (1) essential activities, and/or (2) employment in providing essential business services." (Ex. J, p. 3). Proclamation 20-25 defined "[e]ssential activities" to include "[o]btaining . . . food" and "seeking medical or behavioral health or emergency services and obtaining medical supplies or medication." (*Id.*, § 1(a)(1)-(2)). Proclamation 20-25's definition of "[e]ssential activities" also included "[e]mployment in essential business services," which included "dentists" and "[r]estaurant carry-out and quick serve food operations – including food preparation, carry-out and delivery food employees." (*Id.*, § 1(b); "Essential Critical Infrastructure Workers" List, attached hereto as <u>Exhibit K</u>, pp. 1, 4).[4]

## III.    APPLICABLE LEGAL STANDARDS[5]

Under Washington law,[6] courts "construe insurance policies as contracts," "consider the

---

[4] The CAC also refers to "Order Number 20-03-30-01," which Plaintiffs allege Governor Inslee issued on March 30, 2020. (CAC, ¶ 61). Travelers has not found any proclamations or orders by Governor Inslee that fit that description. Travelers also notes that the naming convention for this order differs from all other orders and proclamations issued by Governor Inslee. Travelers thus assumes the CAC's reference to this order was made in error.

[5] To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court deciding a motion to dismiss under Rule 12(b)(6) must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall*, 629 F.3d at 998. Excepted from this presumption of truth are any "legal conclusions couched as factual allegations," *Griggs v. Am. Int'l Grp., Inc.*, 2014 WL 2573300 *2 (W.D. Wash. June 9, 2014) (citing *Twombly*, 550 U.S. at 555), as well as "allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall*, 629 F.3d at 998.

[6] Washington law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Washington. *Terminal Freezers Inc. v. U.S. Fire Ins.*, 2008 WL 2544898 *2 (W.D. Wash. June 23, 2008), *aff'd*, 345 F. App'x 305 (9th Cir. 2009). Courts in Washington apply the "most significant relationship" test provided in Restatement (Second) of Conflict of Laws § 188. *Id.* at *3. Application of Restatement § 188 to the instant case compels application of Washington law: the subject matter of the contracts (the insured Premises) are located in Washington. (Ex. A, p. 2 of 318; CAC, ¶¶ 5-11). Accordingly, Washington law applies here. *Terminal Freezers Inc.*, 2008 WL 2544898 at *3; *see also*

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 7

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

policy as a whole, and . . . give it a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) (quoting *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 951 P.2d 250 (Wash. 1998)). Undefined terms must be "given [their] plain, ordinary, and popular meaning." *Black v. Nat'l Merit Ins. Co.*, 226 P.3d 175, 178 (Wash. Ct. App. 2010) (internal quotation omitted). And no term in the policy may be "render[ed] . . . meaningless or ineffective" under the court's interpretation of the policy. *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189, 1200–01 (W.D. Wash. 2012) (citing *Allstate Ins. Co. v. Huston*, , 94 P.3d 358 (Wash. Ct. App. 2004)). "Most importantly, if the policy language is clear and unambiguous, [the court] must enforce it as written; [the court] may not modify it or create ambiguity where none exists." *Quadrant Corp.*, 110 P.3d at 737. "[A] clause is ambiguous only 'when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.'" *Id.* (quoting *B & L Trucking*, 951 P.2d at 256). "Finally, in Washington the expectations of the insured cannot override the plain language of the contract." *Id.* "Where the policy's language does not provide coverage, [the court] may not rewrite the policy to do so." *Am. States Ins. Co. v. Delean's Tile & Marble, LLC*,  319 P.3d 38, 43 (Wash. Ct. App. 2013).

## IV.   ARGUMENT

The facts alleged in the CAC demonstrate that Plaintiffs cannot establish entitlement to coverage under the Policies. Plaintiffs seek coverage for "[l]oss caused by Governor Inslee's orders and proclamations and/or related to COVID-19," which Plaintiffs allege "rendered Plaintiffs' property unusable for its intended and insured purpose." (CAC, ¶ 71; *see also id.*, ¶¶ 65-70, 73, 75-76, 78-79, 85, Prayer for Relief ¶ 2). Yet the Policies contain exclusions for

*Milgard Mfg., Inc. v. Illinois Union Ins. Co.*, 2011 WL 3298912 *5-6 (W.D. Wash. Aug. 1, 2011) (noting that, when a policy insures property located in one state, Restatement (Second) of Conflict of Laws § 193 "treats the principal location of the insured risk as the most important factor in the choice-of-law determination").

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 8

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

1  precisely the causes of loss alleged in the CAC—foremost among them the exclusion of *any* type

2  of property coverage, including Business Income, Extra Expense, and Civil Authority, for "loss

3  or damage resulting from any virus . . . that induces or is capable of inducing physical distress,

4  illness or disease." (Ex. A, p. 288 of 318). The Policies also exclude losses caused by

5  governmental orders. (*Id.*, pp. 183, 187 of 318, as modified by *id.*, p. 291 of 318). Based on the

6  applicable exclusions alone, the CAC should be dismissed with prejudice. Even if the Policies

7  did not contain these exclusions, however, dismissal still would be appropriate because Plaintiffs

8  fail to plead facts that would satisfy the requirements of the Business Income, Extra Expense,

9  Extended Business Income and Civil Authority provisions.

10  **A.  Plaintiffs' Claims Are Barred by the Virus Exclusion and Other Exclusions**

11  All of the Policy provisions under which Plaintiffs seek coverage require, as a

12  prerequisite to coverage, "direct physical loss of or damage to property" that is "caused by or

13  result[ing] from a *Covered Cause of Loss*," either at the Premises (for Business Income, Extra

14  Expense and Extended Business Income coverages) or at a non-insured location within 100 miles

15  of the Premises (for Civil Authority coverage).  (Ex. A, pp. 163-64, 176 of 318 (emphasis

16  added)).  The term "Covered Cause of Loss" is defined as "RISKS OF DIRECT PHYSICAL

17  LOSS unless the loss is . . . [e]xcluded[.]" (*Id.*, pp. 164-65 of 318).  The Policies contain an

18  endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which states

19  in plain terms:

20  <u>We will not pay for loss or damage caused by or resulting from any virus, bacterium
   or other microorganism that induces or is capable of inducing physical distress,
21  illness or disease</u>.

22  (*Id.*, p. 288 of 318 (emphasis added)). This exclusion expressly "applies to *all* coverage under *all*

23  forms or endorsements that cover *business income, extra expense . . . or action of civil*

24  *authority*." (*Id.* (emphasis added)). Plaintiffs' claims fail because their alleged losses were

25  caused by what Plaintiffs label as "COVID-19"—i.e., the Coronavirus—"a highly contagious

26  virus that . . . causes severe illness . . . ." (CAC, ¶¶ 32-33). The CAC repeatedly refers to the

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 9

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Orders and the Coronavirus as the causes of Plaintiff's losses. *See, e.g.,* CAC, ¶¶ 65-70 (alleging losses resulting from Coronavirus-related Orders and "government's response to the COVID-19 pandemic"); ¶ 71 (alleging "[l]oss caused by Governor Inslee's orders and proclamations and/or related to COVID-19"); ¶ 73 (similar); Prayer for Relief, ¶ 2 (seeking declaratory judgment that the Policies "cover the Plaintiffs' losses and expenses resulting from the interruption of the Plaintiffs' business by COVID-19 and/or [the Orders]"); *see also id.*, ¶ 62 (describing the Orders as "related to COVID-19").[7]  A virus is not a Covered Cause of Loss and therefore cannot give rise to coverage under the Business Income, Extra Expense, Extended Business Income,[8] or Civil Authority provisions.

The plain language of the virus exclusion controls here. Plaintiffs concede that the Coronavirus is a virus "that induces or is capable of inducing physical distress, illness or disease." (Ex. A, p. 288 of 318; CAC, ¶¶ 32-33). Plaintiffs' losses resulting from the Coronavirus thus fall squarely within the scope of the virus exclusion. Every court that has interpreted the same or a similar virus exclusion has found that it unambiguously precludes coverage for losses, like Plaintiffs', claimed to have resulted from either the Coronavirus or governmental orders issued to curb its spread. *See, e.g.*, *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co.*, 2020 WL 5938689, *5 (C.D. Cal. Oct. 2, 2020) (holding that same virus exclusion at issue here "precludes all coverage" where the plaintiff restaurant alleged business income losses resulting from governmental restrictions on restaurant operations during the COVID-19 pandemic); *Travelers Casualty Ins. Co. of America v. Geragos and Geragos*, 2020 WL 6156584,

---

[7] The CAC alleges that "COVID-19 is a highly contagious virus . . . ." CAC ¶ 32. Technically, the Coronavirus was named SARS-CoV-2 and COVID-19 is the name given to the disease caused by the Coronavirus. *See* WORLD HEALTH ORGANIZATION, *Naming the Coronavirus Disease (COVID-19) and the Virus That Causes It* (available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it).

[8] To the extent Plaintiffs seek coverage under the Extended Business Income provision, that provision is a "business income" coverage. It simply extends the time period for which coverage is provided for a loss that is otherwise covered under the Business Income provision. (*See* Ex. A, p. 164 of 318, as modified by *id.*, p. 204 of 318).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 10

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

at *3-4 (C.D. Cal. Oct. 19, 2020) (granting motion to dismiss with prejudice based on same virus exclusion); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *8 (S.D. Miss. Nov. 4, 2020) (same result).[9] Based on the virus exclusion alone, all of Plaintiffs' claims fail.

To the extent Plaintiffs allege that the Orders caused their losses, several courts have rejected insureds' arguments that virus exclusions did not apply because Coronavirus-related government orders should be divorced from their purpose and deemed the cause of loss. Indeed, one court characterized such an argument as "**Nonsense**."[10] Moreover, even on Plaintiffs' alleged theory, it was the Coronavirus—an excluded peril—that allegedly set in motion the Orders, which allegedly culminated in Plaintiffs' claimed losses. An endorsement to the Policies expressly provides that exclusions preclude coverage in these circumstances, even if losses resulting from allegedly intervening separate "causes" might have otherwise been covered (which is not the case here, as discussed below).[11]

---

[9] *See also W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 2020 WL 6440037, at *5-6 (C.D. Cal. Oct. 27, 2020); *Boxed Foods Co., LLC v. Calif. Capital Ins. Co.*, 2020 WL 6271021, *4 (N.D. Cal. Oct. 26, 2020) (similar); *Founder Institute Inc. v. Hartford Fire Ins. Co.*, 2020 WL 6268539, *1 (N.D. Cal. Oct. 22, 2020) (similar); *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, 2020 WL 5642483, *2-3 (N.D. Calif. Sept. 22, 2020) (similar); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 2020 WL 5240218, *2 (M.D. Fla. Sept. 2, 2020) (similar); *Gavrilides Management Co. v. Michigan Ins. Co.*, Case No. 20 258 CB, tr. at 20-21 (Mich. Cir. Ct. July 1, 2020) (attached hereto as Exhibit L) (same result); *Wilson v. Hartford Cas. Co.*, 2020 WL 5820800, *7 (E.D. Pa. Sept. 30, 2020) (similar); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, *6 (W.D. Tex. Aug. 13, 2020) (similar).

[10] *Franklin EWC*, 2020 WL 5642483 at *1 ("The Covered Cause of Loss, [plaintiffs] insist, is the Closure Orders that created the 'RISK[] OF DIRECT PHYSICAL LOSS' separate and independent from the virus. Thus, under Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. **Nonsense**." [emphasis added]); *see also Boxed Foods*, 2020 WL 6271021 at *4 ("The Civil Authority Orders would not exist absent the presence of COVID-19; COVID-19 is therefore the efficient proximate of Plaintiffs' losses. Thus, the Virus Exclusion precludes Plaintiffs' claim for business income losses and extra expenses under the Civil Authority provision."); *Mark's Engine*, 2020 WL 5938689 *5; *Geragos and Geragos*, 2020 WL 6156584 at *3-4; *Real Hosp., LLC*, 2020 WL 6503405 at *8; *Martinez, DMD, P.A.*, 2020 WL 5240218 at *2; *Diesel Barbershop, LLC*, 2020 WL 4724305 at *6; *Gavrilides*, Ex. L, p. 21.

[11] *See* Ex. A, p. 291 of 318 (amending all exclusions in the Policy to provide that "[l]oss or damage will be considered to have been caused by an excluded event if the occurrence of that event . . . [i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.").

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 11

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Plaintiffs' vague, conclusory allegations that the doctrine of regulatory estoppel should bar Travelers from enforcing the virus exclusion are unavailing. (CAC, ¶¶ 86-87). First, the doctrine of regulatory estoppel has never been recognized by Washington courts. *See* § 2 ENVTL. INS. LITIG.: L. AND PRAC. § 18:26 (2020) ("Outside of West Virginia, New Jersey, and Pennsylvania, courts have either rejected the doctrine outright or shied away from it in insurance coverage disputes."); *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 682 (N.D. Tex. 1996) ("The regulatory estoppel argument has been rejected by virtually every other state and federal court to address the issue."), *aff'd sub nom. SnyderGeneral Corp. v. Cont'l Ins. Co.*, 133 F.3d 373 (5th Cir. 1998). Moreover, Plaintiffs' "information and belief" allegations that Defendants or "their agents or representatives" represented to the Washington Office of the Insurance Commissioner that the virus exclusion would not be used "to limit or curtail coverage" must be disregarded as vague and conclusory. Furthermore, under Washington law, "[w]here, as here, the exclusion unambiguously applies to the facts of the case at hand, the plain language must be applied without reference to extrinsic evidence regarding the intent of the parties." *Quadrant Corp.,..*, 110 P.3d at 742 ; *see also Boxed Foods*, 2020 WL 6271021 *6 (rejecting similar argument in Coronavirus-related case, explaining that "[e]ven if ISO mispresented the purpose and scope of its Virus Exclusion, Plaintiffs' theory requires the Court to construe Defendant's plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary meaning. Neither California law nor federal courts interpreting Virus Exclusions, permit such an outcome.").

*Finally*, even if one were to assume that the Orders constitute a separate cause of Plaintiffs' losses (which they do not), Plaintiffs' claims still fail because coverage would be precluded by two additional exclusions. The Policies' Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused by . . . *[t]he enforcement of any ordinance or law . . . . [r]egulating the* construction, *use* or repair *of any property*."[12] (Ex. A, p. 183 of 318). As a New

---

[12] With respect to all exclusions, an endorsement in the Policy specifies that "Loss or damage will be

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 12

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

York appellate court has explained, this exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and "excludes coverage for losses, including business income losses, caused by the enforcement of the law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate due to ordinance requiring certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses). Here, the Orders fall within the scope of the Ordinance or Law exclusion because they are governmental decrees, which regulated the use of Plaintiffs' premises. *See Wright v. State Farm Fire & Cas. Co.*, 555 F. App'x 575, 578 (6th Cir. 2014) ("Ordinances and laws are characterized by their being created and enforced by a governmental authority[;] [f]or example, *Webster's Third* defines an 'ordinance' as 'an authoritative decree or direction' or 'a public enactment, or law promulgated by governmental authority' . . . ." [citing WEBSTER'S THIRD NEW INT'L DICT. 1588 (3d ed. 1961)]).[13]

Similarly, coverage for losses purportedly caused by the Orders would also be precluded by the Policies' Acts or Decisions exclusion, which provides that "[w]e will not pay for loss or damage caused by. . . [a]cts or decisions . . . of any person, group, organization or governmental body." (Ex. A, p. 187 of 318). This exclusion applies where, as here, a loss is allegedly caused by a governmental decision.[14] Thus, even under Plaintiffs' theory, Plaintiffs cannot establish a

considered to have been caused by an excluded event if the occurrence of that event: **a.** Directly and solely results in loss or damage; or **b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence." (Ex. A, p. 291 of 318.)

[13] The Ordinance or Law and Acts or Decisions exclusions do not preclude Civil Authority coverage when all of the specific requirements for that coverage are satisfied. As discussed below, Plaintiffs have not and cannot allege the requirements for such coverage.

[14] *See, e.g., Jernigan v. Nationwide Mut. Ins. Co.*, 2006 WL 463521, at *10–11 (N.D. Cal. Feb. 27, 2006) (acts or decisions exclusion applied to loss caused by town's "stop-work order"); *Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (acts or decisions exclusion applied where authorities refused to permit resumption of operations); *Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*, No. 308824, 2013 WL 5450284, at *5–6 (Mich. Ct. App. Oct. 1, 2013) (unpublished) (acts or decisions exclusion applied where government order prohibited sale of cheese).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 13

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Covered Cause of Loss, regardless of whether their alleged losses resulted from the Coronavirus or the Orders. For that reason alone, all of their claims fail.

**B.** **As a Matter of Law, Plaintiffs Are Not Entitled to Business Income, Extra Expense or Extended Business Income Coverage Because the CAC Fails to Allege Any "Direct Physical Loss of or Damage to Property" at the Insured Premises**

The virus exclusion and other exclusions discussed above are dispositive. Plaintiffs are also not entitled to Business Income, Extra Expense or Extended Business Income coverage because they have not—and cannot—plead facts that would establish "direct physical loss of or damage to property" at any of the insured premises. The Business Income and Extra Expense coverages provide:

> **a. Business Income**
> . . .
> (2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by <u>direct physical loss of or damage to property at the described premises</u>. The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>. . . .
> . . .
> **b. Extra Expense**
> (1) Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Ex. A, pp. 163–64, of 318 (underscores added)). The Policy's Extended Business Income coverage incorporates the requirement of "direct physical loss of or damage to" property insofar as the coverage is triggered only where there is a covered Business Income loss. (Ex. A, p. 163 of 318).[15]

---

[15] To the extent that the CAC seeks coverage under the Extended Business Income provision, this coverage does not apply in the absence of a covered loss under the Business Income provision. The grant of coverage in the Extended Business Income provision states that "[i]f the necessary 'suspension' of your 'operations' produces a Business Income loss payable under Paragraph **a.** Business Income above, we will also pay for the actual loss of Business Income you sustain during" a specific time period as specified in that provision. (Ex. A, at p. 163 of 318 (emphasis added).) Under the clear and unambiguous language of this provision, if there is no Business Income loss payable under the Business Income provision, there is no coverage under

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 14

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

The CAC fails as a matter of law to plead any "direct physical loss of or damage to property at the described [i.e., insured] premises." Plaintiffs attempt to satisfy the direct physical loss or damage requirement by alleging that they "suffered direct physical loss of use of the covered properties for their intended purposes" as a result of the Orders, which "rendered Plaintiffs' property unusable for its intended and insured purpose." (CAC, ¶¶ 71, 75, 76; *see also id.*, ¶¶ 67, 69).[16] Plaintiffs' theory that an alleged loss of full use of the insured Premises constitutes "direct physical loss of or damage to property" is contrary to Washington law. The Washington Court of Appeals addressed the meaning of "direct physical loss" in *Fujii v. State Farm Fire & Cas. Co.*, 857 P.2d 1051 (Wash. Ct. App. 1993), which involved a landslide that occurred upslope from the plaintiff's house and destabilized the slope. *Id.* at 1051. The plaintiffs argued that their homeowners' policy should provide coverage "because the landslide undermined the lateral support of the covered dwelling, and the loss of lateral support constituted a direct physical loss to the dwelling." *Id.* The insurer's experts agreed that "damage was likely to occur in the near future unless expensive preventive measures were taken," but "no physical damage had yet occurred." *Id.* The court of appeals held that there was no coverage because "it is undisputed that there was <u>no discernible physical damage</u> to the dwelling during the effective period of the policy," and "[u]nder the plain terms of the policy, coverage was triggered by direct physical loss to the dwelling." *Id.* at 1052 (emphasis added).

Similarly, in *Wolstein v. Yorkshire Ins. Co.*, 985 P.2d 400 (Wash. Ct. App. 1999), the

---

the Extended Business Income provision. *See Courtenay, Hunter & Fontana, LLP v. Massachusetts Bay Ins. Co.*, 2008 WL 3876421, at *3 (E.D. La. Aug. 19, 2008) (explaining that covered loss under Business Income provision is a "threshold requirement" for Extended Business Income coverage).

[16] The CAC also includes vague, general allegations that "[t]he presence of . . . COVID-19 . . . in the air" or "on physical surfaces," as well as "[t]he presence of people infected with or carrying COVID-19 particles at premises" constitute direct physical loss of or damage to the property, which the virus allegedly renders "unsafe and unusable." (CAC, ¶¶ 46-49). But Plaintiffs stop short of actually alleging that the Coronavirus was ever present in any of the insured Premises—whether in the air, on surfaces, or through persons infected with the virus. While Travelers maintains that the presence of the Coronavirus cannot cause direct physical loss of or damage to property, the Court need not address that question because Plaintiffs have not alleged that the Coronavirus was ever present in any of their Premises.

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 15

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

1  Washington Court of Appeals interpreted the phrase "physical loss or damage" in a marine

2  builder's risk insurance policy in a case arising from a claim concerning a delay in completing

3  the construction of a yacht. *Id.* at 403. Under the hull risks coverage, the policy provided that

4  "[t]his Policy insures against all risks of <u>physical loss of or damage to</u> the Vessel occurring

5  during the currency of this Policy, except as hereinafter provided." *Id.* at 407 (emphasis added).

6  The court concluded that under this policy language "the insured object must <u>sustain actual</u>

7  <u>damage or be physically lost</u> to invoke hull risks coverage." *Id.* (emphasis added).[17] The Court of

8  Appeals further agreed with a Fifth Circuit decision that "[t]he language 'physical loss or

9  damage' strongly implies that there was an initial satisfactory state that was changed by some

10 external event into an unsatisfactory state[.]" *Id.* at 407-08 (*quoting Trinity Indus., Inc. v. Ins.*

11 *Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990)); *see also Borton & Sons, Inc. v. Travelers*

12 *Ins. Co.*, 99 Wash. App. 1010, 2000 WL 60028 (Wash. Ct. App. Jan. 25, 2000) (unpublished)

13 (court found no "direct physical loss" of physically undamaged apples, where insured claimed

14 inability to sell the apples due to its sale of "inferior" apples stored in nearby building where

15 there was a roof collapse, which allegedly eroded confidence in undamaged apples stored in an

16 undamaged building).

17     *Fujii* and *Wolstein* are consistent with numerous cases nationwide holding that property

18 insurance policies do not cover purely economic losses caused by a loss of use of property that

19 has not been physically lost or damaged.[18] Numerous courts addressing claims for business

20

21 _____

[17] An example of a "direct physical loss" that does not necessarily involve "damage" would be a theft or other permanent dispossession of property. *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of*

22 *Am.*, 2018 WL 3829767, at *4 (C.D. Cal. July 11, 2018) ("[T]he 'loss of' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged," and "the phrase

23 'loss of' includes permanent dispossession of something.").

24 [18] *See, e.g., Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (Minnesota law) (rejecting argument that "mere loss of use or function of property constitutes 'direct

25 physical loss or damage'" without demonstrable physical damage); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002) (rejecting insured's argument that loss of use of theater

26 constituted "direct physical loss" of insured's property); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 16

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

interruption coverage related to COVID-19 have joined this broad consensus, repeatedly and consistently rejecting insureds' arguments that the loss of use of insured property occasioned by government orders issued to curb the spread of Coronavirus constitutes direct physical loss or damage to property. As one district court explained in a case involving a restaurant plaintiff:

> [a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage. . . . Plaintiff's FAC attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage. . . . Plaintiff's FAC does not allege that it was permanently dispossessed of any insured property. . . . As far as the FAC reveals, while public health restrictions kept the restaurant's "large groups" and "happy-hour goers" at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its "elegantly sophisticated surrounding."

*10E, LLC*, 2020 WL 5359653 at *5; *see also Real Hosp., LLC*, 2020 WL 6503405 at *6 (granting motion to dismiss claims of restaurant plaintiff, explaining that complaint "does not allege that any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property").[19] Insured dental practices have likewise failed to allege their loss of use—much less

---

modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, this was not "direct physical loss of or damage to" property); *Harry's Cadillac-Pontiac-GMC Truck Co.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where customers could not access car dealership due to heavy snowstorm).

[19] Many courts have agreed. *See, e.g., Mark's Engine*, 2020 WL 5938689 at *3-5; *Geragos & Geragos*, 2020 WL 6156584 at *4-5; *Mudpie*, 2020 WL 5525171 at *3-6; *Malaube, LLC*, 2020 WL 5051581 at *8-9; *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 2020 WL 5938755, at *4 (N.D. Ga. Oct. 6, 2020); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712, at *3-6 (C.D. Cal. Sept. 10, 2020); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) (granting motion to dismiss, following *10E*) ; *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020); *Diesel*

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 17

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

their partial loss of use—of their businesses constitutes a direct physical loss. *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, *6-8 (S.D. Fla. Nov. 2, 2020).

As in the cases cited above, the CAC fails to allege direct physical loss of or damage to property. The CAC alleges no physical damage whatsoever, much less facts that could plausibly allege "discernible physical damage." *Fujii*, 857 P.2d at 1052. Plaintiffs also do not allege that any property was physically lost, such as a theft or disappearance. Plaintiffs allege only that they "suffered direct physical loss of use of the covered properties for their intended purposes" as a result of "Governor Inslee's orders and proclamations and/or related to COVID-19." (CAC, ¶¶ 71, 76). Even assuming the Orders required the complete closure of Plaintiffs' dental practice and restaurant (which they did not, as explained below), that would not constitute "direct physical loss of or damage to property" under the Policies and Washington law.

Plaintiffs' position is also contrary to the basic principle of Washington law that courts must "consider the policy as a whole, and . . . give it a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance," *Quadrant Corp.*, 110 P.3d at 737 (internal quotation marks and citations omitted), ensuring that none of its terms are rendered "meaningless or ineffective," *Trident Seafoods Corp.*, 850 F. Supp. 2d at 1200–01. *First*, when the Policy covers a Business Income or Extra Expense loss, the time period for such coverage is the "period of restoration," (Ex. A, pp. 163–64 of 318), which generally ends on "[t]he date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality," (*id.*, p. 198 of 318 (emphasis added)). Courts have repeatedly recognized that this definition contemplates that Business Income coverage requires a

---

*Barbershop, LLC*, 2020 WL 4724305 at *5; *Hillcrest Optical, Inc. v. Cont'l Cas. Co.,* 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020); *West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037, at *3-4 (C.D. Cal. Oct. 27, 2020).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 18

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

*physical* change to insured property that can be repaired or replaced. *See*, *e.g.*, *Mudpie*, 2020 WL 5525171 at *4 (Under the policy's definition of "period of restoration, the words '[r]ebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Real Hosp., LLC*, 2020 WL 6503405 at *6 (similar); *Hillcrest Optical*, 2020 WL 6163142 at *8 (similar); *Henry's Louisiana Grill, Inc.*, 2020 WL 5938755 at *6 (similar).[20]

*Second*, each Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policies each contain an express exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." (Ex. A, p. 185 of 318).[21] *See Mudpie,* 2020 WL 5525171, at *6 (citing loss of use exclusion in concluding that policy "was not intended to encompass a loss where the property was rendered unusable without an intervening physical force").[22]

For these reasons, in addition to the lack of a Covered Cause of Loss, Plaintiffs have not and cannot establish an entitlement to coverage under the Policies' Business Income, Extra Expense, or Extended Business Income provisions.

---

[20] *See also Malaube, LLC*, 2020 WL 5051581 at *9 (similar); *Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre Co.,* 302 A.D.2d at 7-8 (similar).

[21] Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations during the "period of restoration," the "loss of use" exclusion does not apply because the cause of the loss is the fire.

[22] In addition, if, as Plaintiffs maintain, the mere loss of use of their insured premises following a governmental order purportedly restricting their use constituted "direct physical loss of or damage to property," the Civil Authority provision, which is a "Coverage Extension" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiffs' position were adopted, any action of civil authority that prohibits access to the insured premises within the meaning of the Civil Authority provision would constitute "direct physical loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Coverage Extension" for Civil Authority. Again, an insurance policy should not be construed in a manner that renders any of its provisions superfluous. *See Trident Seafoods Corp.*, 850 F. Supp. 2d at 1200–01; *Allstate Ins. Co.*, 123 Wash. App. at 541–42.

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 19

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

## C. Plaintiffs Are Not Entitled to Civil Authority Coverage

Plaintiffs also cannot establish an entitlement to Civil Authority coverage because the Orders neither "prohibit[ed] access" to the insured Premises nor were the Orders issued "due to" property damage at any location. The Civil Authority provision provides coverage for:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that <u>prohibits access</u> to the described premises. The civil authority action must be <u>due to direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

(Ex. A, p. 176 of 318). This provision governs the circumstances under which the Policies would potentially provide coverage for a business income or extra expense loss resulting from a governmental order *if* the coverage's requirements are satisfied. In addition to the absence of any Covered Cause of Loss, Plaintiffs fail to satisfy two additional requirements for Civil Authority coverage: (1) an "action of civil authority that *prohibits access* to the described premises"; and (2) the civil authority action must be "due to direct physical loss of or damage to property. *Id.*

*First*, the Orders did not "prohibit[] access" to any of the insured Premises. Courts have consistently held that to "prohibit" access within the meaning of a civil authority provision requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage.[23] Here, as Plaintiffs' allegations and the Orders make clear, the Dentist Plaintiffs have at all times been permitted to continue operating, though they were temporarily limited to "urgent or emergency procedures." (CAC, ¶ 54).[24] Similarly, the Orders did not

---

[23] *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010); *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, 2012 WL 1883461 (W.D. La. 2012), at *9 (coverage only applies where access is "totally and completely prevented—i.e., made impossible" by the civil authority action); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) (no coverage when order did not "actually and completely prohibit access").

[24] *See* Proclamation 20-25, Ex. J, ¶¶ 1 (permitting "essential businesses" to remain open); Essential Critical Infrastructure Workers, Ex. L, p. 1 (including, in list of essential businesses, "[h]ealth care providers and caregivers . . . e.g., . . . dentists"); Proclamation 20-24, Ex. H, p. 2 (prohibiting "dental[] . . . offices in Washington State from providing health care services, procedures, and surgeries that, if delayed, are not

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

prohibit access to Stan's restaurant. Rather, as Plaintiffs concede, the Orders expressly permitted Stan's to continue operating its business to provide take-out and delivery service.[25] (CAC, ¶ 58). In recent Coronavirus-related decisions, courts have concluded, for example, that orders limiting dental operations to emergency procedures did not prohibit access to the insured dental practice within the meaning of the Civil Authority coverage. *Sandy Point Dental, PC*, 2020 WL 5630465 at *3 ("[P]laintiff concedes that dental offices were deemed essential businesses for emergency and non-elective work. Consequently, plaintiff has failed to allege that access to its premises was prohibited by government order, and its claim for civil authority coverage fails."); *see also Raymond H Nahmad DDS PA*, 2020 WL 6392841 at *9 (similar).[26]

*Second*, Plaintiffs have not and cannot establish an entitlement to Civil Authority coverage because the Orders were not issued "due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises." (Ex. A, p. 176 of 318). This provision requires "proof of a *causal link* between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683,

---

[25] anticipated to cause harm to the patient within the next three months"); *id.*, pp. 2-3 (excepting from limited prohibition on dental services "treatment for patients with emergency/urgent needs" and "any surgery that if delayed or canceled would result in the patient's condition worsening (for example, . . . dental care related to the relief of pain and management of infection.)").

[25] Proclamation 20-25, Ex. J, ¶ 1 (permitting Washington residents to "leave their home or place of residence" in order to "conduct or participate in essential activities," which includes "[o]btaining . . . food, or for "employment in essential business services"); Essential Critical Infrastructure Workers, Ex. K, pp. 3-4 (including, in list of essential business services, "[r]estaurant carry-out and quick serve food operations – including food preparation, carry-out and delivery food employees"); Proclamation 20-13, Ex. G, pp. 2-3 (prohibiting "the onsite consumption of food and/or beverages in a public venue" and expressly "not prohibit[ing] the sale of prepared food or beverages that are otherwise legally delivered or taken out of the venue for consumption or the purchasing of groceries that are not consumed within the premises, more commonly known as drive-through, take-out, and delivery services").

[26] *See also Pappy's Barber Shops, Inc.*, 2020 WL 5500221 at *6 (holding COVID-19-related government orders which *completely* barred the insured barbershop from operating still did not trigger Civil Authority coverage because the orders only "prohibit the *operation* of Plaintiff's business; they do not prohibit *access to* Plaintiffs' place of business" [emphasis added]); *Mark's Engine Co. No. 28 Rest., LLC*, 2020 WL 5938689 at *5 (concluding that insured-restaurant "always had complete access to the premises even after the order was issued. The only individuals who could potentially claim 'direct physical loss of' access to the premises would be patrons who were no longer allowed to dine in.").

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 21

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

687 (5th Cir. 2011) (emphasis added).[27] Here, as Plaintiffs concede and the text of the Orders

confirms, the Orders were not issued "due to" any physical loss or damage to property, but rather

"as a result of the COVID-19 outbreak." (CAC, ¶ 51; Proclamation 20-25, Ex. J at 1 (stating

Governor Inslee issued the Orders "as a result of the coronavirus disease 2019 (COVID-19)

outbreak in the United States and confirmed person-to-person spread of COVID-19 in

Washington State" and "the continued worldwide spread of COVID-19")).[28] Plaintiffs do not and

cannot allege that the Orders were "due to direct physical loss of or damage to property." As

several courts in this Circuit and across the country have concluded in nearly identical cases, this

is another independent reason why there is no Civil Authority coverage.[29] Thus, as a matter of

---

[27] *See also*, *e.g.*, *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011), *report and recommendation adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, at *8-10 (S.D. Tex. Feb. 15, 2008) (same); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'").

[28] The CAC appears to allege, "[o]n information and belief," that Governor Inslee issued Proclamation 20-24 due to property damage because it "refers to the health of Washingtonians and property damage throughout Washington State." (CAC, ¶ 56). Plaintiffs' interpretation of Proclamation 20-24 is belied by the text of the Order, which expressly states that its purpose is to "[t]o curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services." (Ex. I, p. 1). *See Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) ("[W]e need not accept as true allegations contradicting documents that are referenced in the complaint.") (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008)).

[29] *Mudpie, Inc.*, 2020 WL 5525171 at *7 ("Mudpie's allegations establish that the government closure orders were intended to prevent the spread of COVID-19. . . . Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order."); *10E, LLC*, 2020 WL 5359653 at *6 (similar); *Pappy's Barber Shops, Inc.*, 2020 WL 5500221 at *6 (granting insurer's motion to dismiss, explaining that "the orders were not issued due to direct physical loss of or damage to property other than at Plaintiffs' premises."); *Sandy Point Dental, PC*, 2020 WL 5630465 at *3 ("Just as the coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property."). These cases simply applied to claims related to COVID-19 the well-established principle that Civil Authority coverage is only triggered by actions of civil authority taken due to property damage. *See e.g., Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (same); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020) (same); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) (same); *South Texas Med.*

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT NO.: 2:20-CV-00597-BJR

PAGE 22

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

law, Plaintiffs are not entitled to Civil Authority coverage for this reason as well.

### D.     Plaintiffs' Declaratory Judgment Claim Should Be Dismissed

The declaratory judgment claim (Count One) should be dismissed because, for all of the reasons explained above, Plaintiffs are not entitled to the relief they seek. *See, e.g.*, *Terrell v. JPMorgan Chase Bank N.A.*, 2014 WL 5449729, at *6 (W.D. Wash. Oct. 24, 2014), *aff'd*, 669 F. App'x 363 (9th Cir. 2016) ("Declaratory judgment is a remedy, not a cause of action. To obtain declaratory relief, Plaintiff must first adequately state an underlying claim. Because Plaintiff has failed to state any plausible claim, she is not entitled to declaratory relief[.]") (citations omitted). The declaratory judgment claim should also be dismissed as duplicative of the breach of contract claim (Count Two).[30]

## V.     CONCLUSION

For all of the foregoing reasons, Travelers respectfully requests that the Court dismiss the Consolidated Amended Class Action Complaint, in its entirety, and with prejudice.[31] In compliance with Sections II(C) and (F) of this Court's Standing Order for All Civil Cases (Dkt #

---

*Clinics*, 2008 WL 450012, at *10 (same) *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, *3 (E.D. La. Oct. 12, 2010) (granting summary judgment for insurer based on lack of causal link between hurricane evacuation order and any prior damage to property).

[30] The declarations sought are simply that there is coverage for the claimed losses, and that Travelers is "responsible for timely and fully paying all such claims." (CAC, ¶ 106, Prayer for Relief.) The declaratory judgment claim thus serves no useful purpose separate and apart from the breach of contract claim. *See, e.g.*, *Brunette v. Humane Soc'y of Ventura Cty.*, 40 F. App'x 594, 598 (9th Cir. 2002) (affirming dismissal of declaratory relief claim where "declaratory relief served no purpose beyond the remedies Brunette sought on her claims at law"); *Hovenkotter v. Safeco Corp.*, 2009 WL 6698629, at *6 (W.D. Wash. Aug. 3, 2009) (dismissing declaratory judgment claim as duplicative of breach of contract claim); *Fosmire v. Progressive Max Ins. Co.*, 2010 WL 3489595, at *5 (W.D. Wash. Aug. 31, 2010) (same).

[31] To the extent Plaintiffs attempt to plead claims on behalf of a proposed class or subclasses (CAC, ¶¶ 88-101), those allegations cannot survive where Plaintiffs' individual claims fail to state a claim. *See, e.g.*, *Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) (putative class claims cannot properly be considered "where the named plaintiffs have failed to state a claim in themselves for the relief they seek"); *Kamath v. Robert Bosch LLC*, 2014 WL 2916070, *5 n.4 (C.D. Cal. June 26, 2014) ("[A]t the motion to dismiss stage, the Court only considers allegations pertaining to the named plaintiff because a putative class action cannot proceed unless the named plaintiff can state a claim for relief as to himself").

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 23

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

26 at pp. 3-4), Travelers certifies that it has met and conferred with Plaintiffs before filing this motion.

DATED: November 6, 2020

Respectfully submitted,


By  s/ Daniel R. Bentson
    Daniel R. Bentson, WSBA #36825
    Bullivant Houser Bailey PC
    925 Fourth Avenue, Suite 3800
    Seattle, WA 98104
    Tel. 206-292-8930
    E-mail: dan.bentson@bullivant.com

    Stephen E. Goldman (*pro hac vice*)
    Wystan M. Ackerman (*pro hac vice*)
    ROBINSON & COLE LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. 860-275-8200
    E-mail: sgoldman@rc.com
    E-mail: wackerman@rc.com

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 24

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the person(s) listed below:

| | |
|---|---|
| Amy Williams Derry<br>Gretchen Freeman Cappio<br>Ian S. Birk<br>Irene M. Hecht<br>Lynn L. Sarko<br>Maureen Falecki<br>Karen B. Swope<br>KELLER ROHRBACK L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: awilliams-derry@kellerrohrback.com<br>Email: gcappio@kellerrohrback.com<br>Email: ibirk@kellerrohrback.com<br>Email: ihecht@kellerrohrback.com<br>Email: lsarko@kellerrohrback.com<br>Email: mfalecki@kellerrohrback.com<br>Email: kswope@kellerrohrback<br><br>*Attorneys for Plaintiffs Jennifer B. Nguyen; Ryan M. Fox, DDS; Khuzi Hsue, DDS, PS; Jeffrey E. Kashner, DDS, MSD; Stan's Bar-B-Q LLC; and Sunseet S. Bath, DDS PS, dba Impressions Dentistry Family Cosmetics* | Nathan L. Nanfelt<br>KELLER ROHRBACK L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: nnanfelt@kellerrohrback<br><br>*Attorney for Plaintiffs Jennifer B. Nguyen; Khuzi Hsue, DDS, PS; Jeffrey E. Kashner, DDS, MSD; and Suneet S. Bath, DMD PS, dba Impressions Dentistry Family Cosmetics* |
| Mark A. Wilner<br>GORDON TILDEN THOMAS & CORDELL<br>600 University St Ste 2915<br>Seattle, WA 98101<br>Telephone: (206) 467-6477<br>E-mail: mwilner@gordontilden.com<br><br>*Attorneys for Plaintiff Suneet S. Bath, DMD PS, dba Impressions Dentistry Family Cosmetics* | |

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 25

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Dated:  November 6, 2020


*Genevieve Schmidt*
Genevieve Schmidt, Legal Assistant

4833-7513-1857.1

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT
NO.: 2:20-CV-00597-BJR

PAGE 26    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930